**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ETHEL HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:21-cv-525 |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| ALLEGHENY HEALTH NETWORK | ) | |
| and ALLEGHENY VALLEY HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Ethel Hayden, filed suit against Defendants, Allegheny Health Network and Allegheny Valley Hospital, pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination Act of 1967 (ADEA), the Americans with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973, and the relevant SEIU Collective Bargaining Agreement.  (ECF No. 19, at 1-2, 3).  Presently, before the Court, is Defendants' Motion to Dismiss Ms. Hayden's August 18, 2021 Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, Rule 10(b).  (ECF No. 20).  Also, before the Court, is Defendant's Motion to Strike Plaintiff's September 8, 2021 Amended Complaint, which was filed as an Errata to the August 18, 2021 Amended Complaint, pursuant to Federal Rules of Civil Procedures 10(b) and 15(a)(2).  (ECF No. 26).

On April 21, 2021, Ms. Hayden filed an "Employment Discrimination Complaint" in this Court.  (ECF No. 1).  On May 26, 2021, Defendants filed a Motion to Dismiss Ms. Hayden's April 21, 2021 Complaint.  (ECF No. 8).  After the Court granted Ms. Hayden's Motion to Amend the Complaint, Ms. Hayden filed her Amended Complaint on August 18, 2021.  (ECF Nos. 16, 18, 19).

The Amended Complaint alleges violations of Title VII, the ADEA, the ADA, the Rehabilitation Act, and the SEIU Collective Bargaining Agreement, asserting: Claim 1, Performance Improvement Plans; Claim 2, Disciplinary Actions; Claim 3, Religious Accommodation; Claim 4, Reasonable Accommodation; Claim 5, Hostile Work Environment; and Claim 6, Constructive Discharge.  (ECF No. 19).

On September 1, 2021, Defendants filed a Motion to Dismiss and accompanying brief in support in response to Ms. Hayden's August 18, 2021 Amended Complaint.  (ECF Nos. 20 & 21).  Defendants argue that: (1) Claims 1-5 are time barred; (2) Claims 1 and 2 do not set forth cognizable causes of action; (3) any purported claim asserted under the ADEA was not properly pled; (4) any purported claims under the Rehabilitation Act or the SEIU Collective Bargaining Agreement were not properly pled; and (5) the Amended Complaint failed to comply with Federal Rule of Civil Procedure Rule 10(b).  (ECF No. 21).

On September 8, 2021, Ms. Hayden filed a new Amended Complaint as an Errata, with "Corrected Exhibits and Redactions."  (ECF No. 22).  On October 1, 2021, Ms. Hayden again filed an additional Amended Complaint as an Errata that included "Federal 10(b) corrections." (ECF No. 23).  Ms. Hayden also filed an "Opposition of Motion to Dismiss Amended Complaint," (ECF No. 24), to which Defendants filed a reply brief on October 8, 2021, (ECF No. 25).

On October 8, 2021, Defendants filed a Motion to Strike Ms. Hayden's September 8, 2021 Amended Complaint, arguing that: (1) it does not comply with Federal Rule of Civil Procedure 10(b)'s enumerated paragraphing requirements, and (2) it does not comply with Federal Rule of Civil Procedure's 15(a)(2)'s requirement that any amended complaint beyond a first amended complaint can only be filed upon leave of court or with the opposing party's

written consent.  (ECF No. 26).  On November 5, 2021, Ms. Hayden filed a brief in opposition to Defendants' Motion to Strike.  (ECF No. 27).

Defendants' Motion to Dismiss and Motion to Strike are now ripe for decision.  For the reasons that follow, the Defendants' Motion to Strike will be denied and Defendants' Motion to Dismiss will be granted in part and denied in part.

### I.    Facts[1]

Ms. Hayden began her career at Allegheny Valley Hospital working in the sewing room. (ECF No. 19, at 3).  In 1979, Ms. Hayden "was approached about transferring to the Registry department to serve as a Patient Access Coordinator."  (ECF No. 19, at 3).  Ms. Hayden alleges that she "endured hostility and outright racism from her colleagues.  Rather than being welcomed to the team, her coworkers made derogatory comments insinuating that she was only hired because she was Black.  They alluded that she was offered the position to fill a Negro quota rather than her demonstrated ability to do her current job well."  (ECF No. 19, at 3).  Ms. Hayden alleges that this behavior continued throughout the duration of her career at Allegheny Valley Hospital, and on September 13, 2018, she "wrote a letter about the bullying and discrimination she was experiencing to her supervisor."  (ECF No. 19, at 3).  Ms. Hayden alleges that after she wrote this letter, management retaliated against her and subjected her to an escalating hostile

---

[1] The background facts are taken from Ms. Hayden's Amended Complaint.  (ECF Nos. 19, 22, 23).  Because the case is presently before the Court on a Motion to Dismiss under the Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to Ms. Hayden.  *See Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017).

work environment.  (ECF No. 19, at 3).  Ms. Hayden alleges she filed her first EEOC charge for "discrimination" on June 20, 2019.[2]  (ECF No. 19, at 2).

Ms. Hayden alleges the following facts related to Claim 1, Performance Improvement Plans.  On June 25, 2019, management issued a Performance Improvement Plan for Ms. Hayden, which stated that she was "deficient in using Electronic Health Record (EHR) systems and unable to properly identity [sic] patients prior to administering an armband."  (ECF No. 19, at 4). On July 2, 2019, management issued a second Performance Improvement Plan that was identical to the first Performance Improvement Plan "with a few exceptions including the addition of specified procedures regarding the EHR system."  (ECF No. 19, at 4).

Ms. Hayden alleges the following facts related to Claim 2, Disciplinary Actions.  On June 28, 2019, management issued a Disciplinary Action for issues related to the EHR system and required Ms. Hayden to receive additional training on the EHR system.  (ECF Nos. 19, at 7; 19-5, at 3).  On July 11, 2019, management issued a Disciplinary Action against Ms. Hayden for not being proficient in the EHR system and armband procedures.[3]  (ECF No. 19, at 8).  On September 25, 2019, management issued a third Disciplinary Action for Ms. Hayden's failure to satisfy the requirements to attain a mandatory certification.  (ECF Nos. 19, at 8; 19-5, at 6).  On November 1, 2019, Ms. Hayden received a fourth Disciplinary Action for "excessive absences." (ECF Nos. 19, at 8; 19-5, at 11).

Ms. Hayden alleges the following facts related to Claim 3, Religious Accommodation. On October 18, 2019, Ms. Hayden requested to have her Wednesday Bible Study religious

---

[2] The Court notes that in her second EEOC charge, Ms. Hayden stated, "I filed a previous charge of discrimination against Respondent on or about June 18, 2019."  (ECF No. 19, at Exhibit A.1).
[3] Ms. Hayden states in her Amended Complaint that she attached the July 11, 2019 Disciplinary Action, but the Court was not able to find that document in the Record.  (ECF No. 19, at 8).

accommodation reinstated.  (ECF No. 19, at 9).  On November 18, 2019, Ms. Hayden sent a follow-up email to management inquiring about her religious accommodation request for attending Bible Study on Wednesdays.  (ECF No. 19, at 9).  On January 9, 2020, the EEOC issued a decision that determined that Defendants improperly denied Ms. Hayden's requested religious accommodation.  (ECF No. 19, at 9).  On January 13, 2020, Ms. Hayden was "informed that the religious accommodation was approved, however, the Employer refused to offer an official accommodation in writing."  (ECF No. 19, at 9).

Ms. Hayden alleges the following facts related to Claim 4, Reasonable Accommodation. Ms. Hayden alleges that around September 25, 2019, she provided management with medical documentation from a doctor that excused her from work due to medical complications related to her spending extensive hours on her feet while working the Emergency Room shift.  (ECF No. 19, at 10).  The hospital continued to schedule Ms. Hayden to work the Emergency Room shift, and she submitted a medical disability accommodation request on October 22, 2019.  (ECF No. 19, at 10).  On November 13, 2019, Ms. Hayden's primary care physician submitted the completed forms to support Ms. Hayden's medical disability accommodation request.  (ECF No. 19, at 10).  These forms stated that Ms. Hayden was diagnosed with arthritis in the ankles and right hip, trochanteric bursitis, and gout.  (ECF No. 19, at 10).  On November 19, 2019, Ms. Hayden emailed Lori Brown about her requested medical accommodation as she was still being assigned shifts in the Emergency Room.  (ECF No. 19, at 10).  On November 21, 2019, Ms. Hayden emailed the Leave Management Office asking that her medical disability accommodation request be granted.  (ECF No. 19, at 10).  Management responded that they would not approve a medical accommodation request without union approval.  (ECF No. 19, at 10).  Meanwhile, Ms. Hayden's union representative had recently been reassigned, and Ms.

Hayden did not receive the proper contact information for her new union representative until December 3, 2019. (ECF No. 19, at 10-11). On December 13, 2019, Ms. Brown met with Ms. Hayden and verbally approved her permanent reassignment to the Greeter's Desk. (ECF No. 19, at 11). On December 17, 2019, Ms. Brown recanted this verbal agreement, and Ms. Hayden was again scheduled for Emergency Room shifts. (ECF No. 19, at 11). On December 17, 2019, Ms. Hayden sent a letter to her new union representative, concerning her accommodation request. (ECF No. 19, at 11). Ms. Hayden alleges that her union representative stated that "he was under the impression that the Plaintiff had already been accommodated on December 23, 2019 [sic] but that she continued to be scheduled in the ER." (ECF No. 19, at 11).

Ms. Hayden alleges the following facts related to Claim 5, Hostile Work Environment. On June 11, 2019, one of Ms. Hayden's coworkers declared in front of several customers and for no apparent reason, that she was going to report Ms. Hayden to human resources. (ECF No. 19, at 12). On June 17, 2019, Ms. Hayden asked the same coworker a question and, in front of a customer, the coworker yelled, "I already answered this question before!" (ECF No. 19, at 12). On July 12, 2019, a coworker asked Ms. Hayden why she continued to "take crap" from Lori Brown and the other managers. (ECF No. 19, at 12). Said coworker also asked, "Why don't you quit and leave with dignity." (ECF No. 19, at 12). On July 25, 2019, Ms. Hayden attended a mandatory meeting, where she felt "surrounded" by "the excessive amount of management officials present for a meeting." (ECF No. 19, at 12). On July 30, 2019, "during a meeting, after discussing disciplinary action, the Plaintiff's manager Lori Brown said 'How's that for a CORE violation.'" (ECF No. 19, at 12). On February 18, 2020, a security guard told Ms. Hayden that a coworker had told a patient that Ms. Hayden "was old and didn't know how to do her job."

(ECF No. 19, at 12).  On February 18, 2020, Ms. Hayden resigned, which she considered to be a constructive discharge.  (ECF No. 19, at 14).

Ms. Hayden filed her second EEOC charge for "retaliation" on May 19, 2020.  (ECF No. 19, at 2, Exhibit A.1).  Her second EEOC charge states:

> I filed a previous charge of discrimination against Respondent on or about June 18, 2019.  Subsequent to filing the charge, I was subjected to a continuing hostile work environment.  Consequently, on or about February 18, 2020, I retired from my position of Patient Access Coordinator because of the hostile work environment.  I consider this a constructive discharge.  I believe that Respondent discriminated against me in retaliation for having filed a previous charge of employment discrimination (533-2019-01057) in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Age Discrimination in Employment Act (ADEA) and/or the Americans with Disabilities Act, as amended (ADA).

(ECF No. 19, at Exhibit A.1).

Ms. Hayden alleges that she received a Right to Sue Letter from the EEOC for her first EEOC charge on July 8, 2020.  (ECF No. 19, at 2).  Ms. Hayden alleges that she emailed a complaint regarding the first EEOC charge to the Western District of Pennsylvania's PACER intake email address on October 2, 2020.  (ECF No. 19, at 2).  Court records do not indicate that the Clerk's Office received or acted upon said email.

On January 19, 2021, Ms. Hayden received a Right to Sue Letter from the EEOC for her second EEOC charge.  (ECF No. 19, at 2).  Ms. Hayden subsequently timely filed suit in this Court on April 21, 2021.  (ECF No. 1).

## II.    Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir.

2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The purpose of

a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).  Amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

## III. Discussion

### A. Federal Rules of Civil Procedure 10(b) and 15(a)(2)

Defendants argue in their Motion to Dismiss that Ms. Hayden's Amended Complaint should be dismissed because it does not contain enumerated paragraphs per Federal Rule of Civil Procedure 10(b).  (ECF No. 21, at 8).  Defendants argue in their Motion to Strike that Ms.

Hayden's September 8, 2021 Amended Complaint should be dismissed because (1) it does not

comply with Federal Rule of Civil Procedure 10(b)'s enumerated paragraphing requirements,

and (2) it does not comply with Federal Rule of Civil Procedure's 15(a)(2)'s requirement that

any amended complaint beyond a first amended complaint can only be filed upon leave of court

or with the opposing party's written consent.  (ECF No. 26, at 1-2).  Ms. Hayden responded that

she filed her September 8, 2021 Amended Complaint, (ECF No. 23), in order to comply with

Federal Rule of Civil Procedure 10(b).  (ECF No. 24, at 6-7).

As an initial matter, the Court notes that while courts have an obligation to read a pro se

litigant's pleading liberally, a pro se plaintiff is not excused from complying with rules of

procedural and substantive law.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48

(3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  Although courts are

directed to "liberally construe pro se filings," the plaintiff "is not exempt from procedural rules

or the consequences of failing to comply with them."  *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F.

App'x 591, 593 (3d Cir. 2014).  "Courts are more forgiving of pro se litigants for filing relatively

unorganized or somewhat lengthy complaints." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d

Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (citing 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure* § 1217 (3d ed. 2019).  The Third Circuit has explained:

> The circumstances surrounding the particular pleading, including the nature of the
> action, the sort of relief being sought, the availability of information, and other
> practical considerations must guide the inquiry into whether the litigant's
> statement of his claim qualifies as "short and plain." *See* Wright & Miller, *supra*,
> § 1217.  Put simply, "judging the sufficiency of a pleading is a context-dependent
> exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d
> Cir. 2010).

*Id.* at 93.  Furthermore, a "statement of a claim may be 'plain' even if it does not include every

name, date, and location of the incidents at issue." *Id.* (citations omitted).  "Missing details or

superfluous material do not necessarily render a complaint unintelligible.  Indeed, even if it is vague, repetitious, or contains extraneous information, a pro se complaint's language will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits."  *Id.* at 93-94 (citations omitted).

Ms. Hayden is a pro se plaintiff, and as pro se plaintiffs are given more leniency in crafting their pleadings than a party represented by counsel, the Court will not dismiss Ms. Hayden's August 18, 2021 Amended Complaint for failure to comply with Federal Rules of Civil Procedure 10(b) or 15(a)(2).  The Court is able to ascertain claims within Ms. Hayden's August 18, 2021 Amended Complaint that survive the Motion to Dismiss.  Even if the Court dismisses Ms. Hayden's Amended Complaint under Rules 10(b) or 15(a)(2), Ms. Hayden would still be granted leave to amend, which would then give her the opportunity to comply with Federal Rule of Civil Procedure 10(b).  For the purposes of the present Motion to Dismiss and Motion to Strike, Ms. Hayden has already made such corrections when she filed her October 1, 2021 Amended Complaint with "Federal Rule 10(b) corrections."  Following review of each of the three Amended Complaint filings, this Court concludes that neither the September 8, 2021 Amended Complaint nor the October 1, 2021 Amended Complaint contain any substantive differences from the August 18, 2021 Amended Complaint.  Thus, although there is procedural irregularity in her filings, the three Amended Complaints are essentially the same.  The three Amended Complaints merely correct procedural deficiencies and present no prejudice to the Defendants.  As such, the Defendants' Motion to Dismiss the August 18, 2021 Amended Complaint and their Motion to Strike the September 8, 2021 Amended Complaint will be denied.  For ease of reference, all three filings, the August 18, 2021, September 8, 2021, and October 1, 2021 Amended Complaints will be referenced as "Amended Complaint" in this opinion.

### B. Exhaustion of Administrative Remedies

Defendants argue that Counts 1-5 of Ms. Hayden's Amended Complaint should be dismissed because she failed to file a complaint within ninety days of receiving her July 8, 2020 Right to Sue Letter from her first EEOC charge.  (ECF No. 21, at 3).  Ms. Hayden argues that she timely filed a complaint within ninety days of receiving her January 19, 2021 Right to Sue Letter for her second EEOC charge.  (ECF No. 24, at 2).

### 1. Timeliness of October 2, 2020 Complaint

Title VII sets forth administrative procedures that a plaintiff must exhaust with the EEOC prior to bringing a civil action in court.  *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001).  First, the plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.  *Id.* at 469-70.  The EEOC will then investigate the allegations in the charge.  *Id.* at 470.  Once the investigation is complete, the EEOC notifies the charging party that it has concluded its investigation and it issues a Right to Sue Letter.  *Id.*  A plaintiff seeking to bring suit in court must file his or her complaint within ninety days of the date on which he or she "has notice of the EEOC's decision not to pursue the administrative charge."  *Id.*; *see also* 42 U.S.C. § 2000e-5(f)(1).   In the absence of evidence of a receipt date, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it."  *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).

On July 8, 2020, EEOC issued Ms. Hayden's Right to Sue Letter for her first EEOC charge.  (ECF No. 19, at 2).  The ninety-day limitations period for Ms. Hayden's first EEOC charge began to run on July 11, 2020, 3 days after the Right to Sue Letter was issued.  As such, Ms. Hayden had until October 11, 2020 to file a complaint for the claims asserted within her first

EEOC charge.  No complaint was filed in response to the Right to Sue Letter.  On October 2,

2020, Ms. Hayden emailed a Complaint to the Western District of Pennsylvania's PACER intake

email address.[4]  Per the District Court's Local Rules, emailing a complaint is insufficient to file a

complaint in the District.  LCvR 5.5 & 10(A)-(B); *see also* Fed. R. Civ. P. 5(d)(2).

Courts strictly construe the ninety-day filing period and have held that, "in the absence of

some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be

dismissed."  *Burgh*, 251 F.3d at 470 (citation omitted).  According to the Third Circuit, "courts

must be sparing in their use of equitable tolling."  *Id.*  The Third Circuit has primarily applied

tolling in three situations: "(1) where the defendant has actively misled the plaintiff respecting

the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been

prevented from asserting his or her own rights; or (3) where the plaintiff has timely asserted his

or her rights mistakenly in the wrong forum."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38

F.3d 1380, 1387 (3d Cir. 1994) (citation omitted).

Equitable tolling does not apply here, because any failure to properly file a timely

complaint in relation to Ms. Hayden's first EEOC charge is solely attributable to Ms. Hayden.

First, there are no allegations that Defendants actively misled Ms. Hayden or otherwise hindered

her ability to file her complaint.

Second, there are no other allegations that Ms. Hayden was otherwise prevented from

properly filing her complaint in District Court.  Ms. Hayden asserts that she emailed her

Complaint to the Court's PACER intake email address on October 2, 2020 and that she called the

Clerk's Office for assistance.  Ms. Hayden asserts that she received no response from the Clerk's

---

[4] Although Ms. Hayden alleges that she sent an email on October 2, 2020 to
intake2_pawd@pawduscourts.gov, she did not attach such email to her Amended Complaint, and
there is no record indication that the Clerk's Office received or acted upon said email.

Office, yet she alleges no further action on her part to assure that the Complaint had been properly filed before the October 11, 2020 deadline.  The Clerk's Office was open for business on October 2, 2020 and beyond.  Ms. Hayden did not file her complaint through either of the prescribed and standard procedures for submitting it, to wit in person or by mailing it to the Clerk's Office.  Ms. Hayden cites a "Western Pennsylvania District Court *Administrative Order*" to support her argument that her October 2, 2020 email effected a proper filing of her Complaint. She does not attach or otherwise reference the specific Administrative Order that she relied upon in relation to her October 2, 2020 email.  (ECF No. 19, at 2).  The Court notes that on June 30, 2020, an Administrative Order was entered at Docket Number 2:20-mc-954.  Said Order provided that "the Intake Office of the Joseph F. Weis, Jr. U.S. Courthouse in Pittsburgh, Pennsylvania will be closed from 3 p.m. on Tuesday, June 30, 2020 through July 3, 2020."   The June 30, 2020 Administrative Order further provided that "Litigants and other parties without ECF access may send documents for filing by electronic mail to the Clerk's Office at this address: intake2_pawd@pawd.uscourts.gov."  However, after July 3, 2020, the Order for email filing was not in effect and the Clerk's Office was no longer using that email address to receive complaints.  Thus, except for the period of June 30, 2020 through July 3, 2020, as defined within the Administrative Order, pro se plaintiffs could only file a complaint with the Clerk's Office in person or by mail.  Thus, Ms. Hayden's October 2, 2020 email did not effect a proper filing of a complaint following her first EEOC charge and Right to Sue Letter.

Finally, there are no assertions that Ms. Hayden filed a timely complaint in the wrong forum.  Ms. Hayden includes no facts in her Amended Complaint to support equitable tolling regarding the filing of a complaint following her first EEOC Right to Sue Letter.  Thus, the

14

claims asserted in her first EEOC charge, as authorized by the first Right to Sue Letter, were not timely filed.

### 2.   Timeliness of April 21, 2021 Complaint

On January 19, 2021, the EEOC issued a Right to Sue Letter following Ms. Hayden's second EEOC charge.  On April 21, 2021, Ms. Hayden timely filed her "Employment Discrimination Complaint" with the Clerk's Office.  As such, Ms. Hayden properly exhausted her administrative remedies for actionable claims within her April 21, 2021 Complaint.

### 3.   Timeliness and Scope of Claims Covered by the Second EEOC Charge

As discussed above, any EEOC charge must be filed within 300 days of when the alleged discriminatory action occurred.  Any conduct outside of the 300-day time frame is not actionable.  After a plaintiff receives a Right to Sue Letter from the EEOC, the scope of a resulting private civil action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978) (citation omitted).  In order to include a claim in the district court action that was not included in the original EEOC charge, there must be a "close nexus" between the facts alleged in the administrative charge and any newly raised claim.  *See id.* at 967; *see also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

On her second EEOC charge form, Ms. Hayden selected the "retaliation" box, and she noted that she was bringing suit pursuant to Title VII, the ADA, and the ADEA.  She also noted that she experienced a hostile work environment and was constructively discharged from her job. The timely claims asserted within her Amended Complaint must fall within the scope of her second EEOC charge and the EEOC investigation related to said charge in order to be properly actionable before this Court.

### a.   Claim 1 – Performance Improvement Plans

Ms. Hayden filed her first EEOC charge on June 20, 2019.  Thereafter, on June 25, 2019, she received her first Performance Improvement Plan.  On May 19, 2020, Ms. Hayden filed her second EEOC charge, 324 days after the alleged June 25, 2019 Performance Improvement Plan, which she claims was a retaliatory activity.  On July 2, 2019, Defendants issued a second Performance Improvement Plan, which Ms. Hayden received on July 11, 2019.  Ms. Hayden claims that the second Performance Improvement Plan was also a retaliatory activity in response to her June 20, 2019 first EEOC charge.  She filed her second EEOC charge, claiming retaliation, on May 19, 2020, 313 days after she received notice of said second Performance Improvement Plan.  As Ms. Hayden did not meet the requirements for filing her second EEOC charge for either of these Performance Improvement Plans within the 300-day time period, any Title VII retaliation claims related to the June 25, 2019 and July 2, 2019 Performance Improvement Plans will be dismissed for failure to exhaust administrative remedies.  The Defendants' Motion to Dismiss Ms. Hayden's Title VII Retaliation claims at Claim 1, Performance Improvement Plans, will be granted.  Further, any amendment will be futile.

### b.   Claim 2 – Disciplinary Actions

As regards the alleged Title VII retaliatory actions pleaded at Claim 2, Disciplinary Actions, Ms. Hayden received her first Disciplinary Action from the Defendants on June 28, 2019.  Ms. Hayden filed her second EEOC charge on May 19, 2020, which was 326 days after the alleged retaliatory activity.  Ms. Hayden received her second Disciplinary Action on July 11, 2019.  Her second EEOC charge was filed on May 19, 2020, 313 days after said alleged retaliatory activity.  As Ms. Hayden did not meet the time requirements for filing her EEOC charge within the 300-day time period, any Title VII retaliation claims related to the June 28,

2019 and July 11, 2019 Disciplinary Actions will be dismissed.  The Defendants' Motion to Dismiss Ms. Hayden's Title VII retaliation claims, related to the June 28, 2019 and July 11, 2019 Disciplinary Actions, will be granted.  Further, any amendment will be futile.

Ms. Hayden received her third Disciplinary Action on September 25, 2019.  Ms. Hayden's second EEOC charge was timely filed, 237 days after said alleged retaliatory activity. Ms. Hayden received her fourth Disciplinary Action on November 1, 2019, for which her second EEOC charge was timely filed, 201 days after said retaliatory activity.

As regards the scope of Ms. Hayden's Title VII Retaliation claims germane to the timely filed September 25, 2019 and November 1, 2019 Disciplinary Actions, Ms. Hayden selected the "retaliation" box on her second EEOC charge form and explained that such retaliation occurred in violation of Title VII.  As the September 25, 2019 and November 1, 2019 Disciplinary Actions can reasonably be expected to arise out of the scope of the EEOC's subsequent investigation into Ms. Hayden's second EEOC charge, the Court holds that Ms. Hayden's Title VII Retaliation claims germane to said Disciplinary Actions are sufficiently pled to be within the scope of Ms. Hayden's second EEOC charge.

Since Ms. Hayden's Title VII Retaliation claims related to the September 25, 2019 and November 1, 2019 Disciplinary Actions are timely and within the scope of the second EEOC charge, they are properly actionable in this case.  As such, the Defendants' Motion to Dismiss Ms. Hayden's Title VII Retaliation claims related to the September 25, 2019 and November 1, 2019 Disciplinary Actions will be denied.  Said claims will remain in the case.

### c.  Claim 3 – Religious Accommodation

As regards the alleged Title VII retaliatory action claim asserted in Claim 3, Religious Accommodation, Ms. Hayden requested reinstatement of her religious accommodation to attend

Wednesday Bible Study on October 18, 2019.  Defendants did not respond to said request.  On November 18, 2019, Ms. Hayden sent a follow-up email to the Defendants regarding her religious accommodation request.  On January 13, 2020, Ms. Hayden was informed that her religious accommodation request was approved, but the Defendants refused to put such approval in writing.  Ms. Hayden claims that such refusal to put the approval in writing was in retaliation for her prior protected activity.  Ms. Hayden timely filed her second EEOC charge, 128 days after Defendants' refusal.

As regards the scope of Ms. Hayden's Title VII Retaliation claims germane to Defendants' January 13, 2020 refusal to put Ms. Hayden's religious accommodation approval in writing, Ms. Hayden selected the "retaliation" box on her second EEOC charge form and explained that such retaliation occurred in violation of Title VII.  As Ms. Hayden's Title VII Retaliation claim in relation to her requested religious accommodation can reasonably be expected to arise out of the scope of the EEOC's subsequent investigation into Ms. Hayden's second EEOC charge, the Court holds that Ms. Hayden's Title VII Retaliation claims germane to Ms. Hayden's requested religious accommodation are sufficiently pled to be within the scope of Ms. Hayden's second EEOC charge.

Since Ms. Hayden's Title VII Retaliation claim in relation to her requested religious accommodation was timely and within the scope of the second EEOC charge, said claim is properly actionable within this case.  As such, the Defendants' Motion to Dismiss any Title VII Retaliation claim related to Claim 3, Religious Accommodation, will be denied.  Said claim will remain in the case.

### d.  Claim 4 – Reasonable Accommodation

As regards the timeliness of Ms. Hayden's Title VII Retaliation claim at Claim 4, Reasonable Accommodation, on October 22, 2019, she submitted a disability accommodation request to management, requesting that she no longer be assigned to the ER shift because of the job's standing requirements.  On November 19, 2019, Ms. Hayden sent a follow-up email to management to inquire about the status of her disability accommodation.  On November 21, 2019, Ms. Hayden emailed the Leave Management Office requesting that her accommodation request be granted.  On December 13, 2019, Ms. Hayden's manager verbally approved that she would be assigned to the Greeter's Desk.  On December 17, 2019, Ms. Hayden was again assigned to work the ER shift.  Ms. Hayden's second EEOC charge was timely filed, 154 days after management again scheduled her to work the ER shift.

As regards the scope of Ms. Hayden's Title VII Retaliation claims germane to Defendants' denial of Ms. Hayden's disability accommodation request, Ms. Hayden selected the "retaliation" box on her second EEOC charge form and explained that such retaliation occurred in violation of Title VII.  As Ms. Hayden's Title VII Retaliation claim in relation to her requested disability accommodation can reasonably be expected to arise out of the scope of the EEOC's subsequent investigation into Ms. Hayden's second EEOC charge, the Court holds that Ms. Hayden's Title VII Retaliation claims germane to Ms. Hayden's requested disability accommodation are sufficiently pled to be within the scope of Ms. Hayden's second EEOC charge.

Since Ms. Hayden's Title VII Retaliation claim in relation to her requested disability accommodation was timely and within the scope of the second EEOC charge, said claim is properly actionable within this case.  As such, the Defendants' Motion to Dismiss as untimely

19

Ms. Hayden's Title VII Retaliation claim related to Claim 4, Reasonable Accommodation, will be denied.  Said claim will remain in the case.

### e.  Claim 5 – Hostile Work Environment

As regards to Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims at Claim 5, Hostile Work Environment, the alleged final action supporting Ms. Hayden's Hostile Work Environment claim occurred on February 18, 2020.  (ECF No. 19, at 12).  Ms. Hayden's Amended Complaint alleges that she has experienced a hostile work environment since she began working as a Patient Access Coordinator in 1979.  Ms. Hayden also alleges the following occurrences in support of her Hostile Work Environment claims.  On June 11, 2019, when one of Ms. Hayden's coworkers declared that she was going to report Ms. Hayden to human resources in front of several coworkers for no apparent reason.  On June 17, 2019, Ms. Hayden asked the same coworker a question and, in front of a customer, the coworker yelled, "I already answered this question before!"  (ECF No. 19, at 12).  On July 12, 2019, another coworker asked Ms. Hayden why she continued to "take crap" from the managers.  (ECF No. 19, at 12).  She also asked Ms. Hayden, "Why don't you quit and leave with some dignity."  (ECF No. 19, at 12).  On July 25, 2019, Ms. Hayden attended a mandatory meeting where she felt "'surrounded' with the excessive amount of management officials for the meeting."  (ECF No. 19, at 12).  On July 30, 2019, during a meeting discussing a disciplinary action, Ms. Hayden's manager said, "How's that for a CORE violation."  (ECF No. 19, at 12).  On February 18, 2020, a security guard told Ms. Hayden that a coworker "told a patient that she was old and didn't know how to do her job."  (ECF No. 19, at 12).  Ms. Hayden also alleges numerous instances where she informed management of the bullying that she experienced.  (ECF No. 19, at 12-13).

While many of the instances alleged by Ms. Hayden fall outside the time frame to be individually actionable, under the continuing violation doctrine, the Court considers the pattern of the hostile work environment to fall within the scope of the second EEOC charge. "Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice and cannot be said to occur on any particular day." *Id.* "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* at 165-66.

Presently, the final alleged discriminatory action occurred on February 18, 2020, 92 days before Ms. Hayden timely filed her second EEOC charge. Although some of the alleged discriminatory actions occurred prior to the 300-day statute of limitations period, the Court may consider such past actions as part of a pattern in relation to Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment Claim 5, Hostile Work Environment.

As regards the scope of Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims, Ms. Hayden selected the "retaliation" box on her second EEOC charge form and explained that such retaliation occurred in violation of Title VII, the ADEA, and the ADA. She also explained on her second EEOC charge form that she "was subjected to a continuing hostile work environment." (ECF No. 19, at Exhibit A.1). As Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims can reasonably be expected to arise out of the scope of the EEOC's subsequent investigation into Ms. Hayden's second EEOC charge,

the Court holds that Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims are sufficiently pled to be within the scope of Ms. Hayden's second EEOC charge.

Since Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims were timely and within the scope of the second EEOC charge, said claims are properly actionable within this case.  As such, the Defendants' Motion to Dismiss as untimely Ms. Hayden's Title VII, ADEA, and ADA Hostile Work Environment claims related to Claim 5, Hostile Work Environment, will be denied.  Said claims shall remain in the case.

### C.  Violations of the Rehabilitation Act and the SEIU Collective Bargaining Agreement

Defendants argue that Ms. Hayden's Amended Complaint does not sufficiently allege claims pursuant to the Rehabilitation Act.  (ECF No. 21, at 8).  In response, Ms. Hayden agrees to strike any claims related to violations of the Rehabilitation Act.  (ECF No. 24, at 5).  As such, said claims will be dismissed.

Defendants argue that Ms. Hayden's Amended Complaint does not sufficiently allege claims brought pursuant to the SEIU Collective Bargaining Agreement.  (ECF No. 21, at 8).  As regards the SEIU Collective Bargaining Agreement, Defendants further contend that the Amended Complaint does not indicate how the Agreement was violated.  (ECF No. 21, at 8).  In response, Ms. Hayden argues that her Amended Complaint sufficiently pleads violations and that such violations are essential to her claims within her Amended Complaint.  (ECF No. 24, at 5).

While an individual employee may bring suit against an employer for breaching the terms of a collective bargaining agreement, the employee is required to first exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).  Although Ms. Hayden references various instances of how Defendants breached the SEIU Collective Bargaining Agreement, she does not include any

allegations to establish that she exhausted the Collective Bargaining Agreement's grievance or arbitration process.  As such, the Defendants' Motion to Dismiss will be granted.  Ms. Hayden's claims for violations of the Collective Bargaining Agreement will be dismissed from the case. As the Court cannot say that amendment will be inequitable or futile, Ms. Hayden will be granted leave to amend.

## IV.    Conclusion

For the reasons discussed above, Defendants' Motion to Strike Ms. Hayden's Amended Complaint will be denied.

Defendants' Motion to Dismiss will be granted without leave to amend as follows:

- The Amended Complaint's Title VII Retaliation claims, at Claim 1, Performance Improvement Plans;

- The Amended Complaint's Title VII Retaliation claims, at Claim 2, Disciplinary Actions, for the alleged June 28, 2019 and July 11, 2019 Disciplinary Actions; and

- The Amended Complaint's claims for violations of the Rehabilitation Act.

Defendants' Motion to Dismiss will be granted with leave to amend as follows:

- The Amended Complaint's claims for violations of the SEIU Collective Bargaining Agreement.

Defendants' Motion to Dismiss will be denied as follows:

- The Amended Complaint's Title VII Retaliation claims at Claim 2, Disciplinary Actions, for the alleged events of September 25, 2019 and November 1, 2019 Disciplinary Actions;

- The Amended Complaint's Title VII Retaliation claim at Claim 3, Religious Accommodation;

- The Amended Complaint's Title VII Retaliation claim at Claim 4, Reasonable Accommodation; and

- The Amended Complaint's Title VII, ADEA, and ADA Hostile Work Environment claims at Claim 5, Hostile Work Environment.

An appropriate Order will be entered.


DATE: _3/15/2022_____

Marilyn J. Horan
United States District Judge