**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ETHEL HAYDEN,                                )
                                             )
                                             )          2:21-CV-00525-MJH
            Plaintiff,                       )
                                             )
      vs.                                    )
                                             )
ALLEGHENY HEALTH NETWORK,                    )
ALLEGHENY VALLEY HOSPITAL,                   )
                                             )

            Defendants,


**MEMORANDUM OPINION**

On April 21, 2021, Plaintiff, Ethel Hayden, filed suit against Defendants, Allegheny Health

Network and Allegheny Valley Hospital. (ECF No. 1). On March 28, 2022, Ms. Hayden filed a

Second Amended Complaint, seeking relief under Title VII of the Civil Rights Act of 1964

("Title VII"), the Age Discrimination Act of 1967 ("ADEA"), and the Americans with

Disabilities Act of 1990 ("ADA"). The Second Amended Complaint alleges various violations of

these statutes, asserting: Claim 1, Disciplinary Actions; Claim 2, Religious Accommodation;

Claim 3, Reasonable Accommodation; Claim 4, Hostile Work Environment; and Claim 5,

Constructive Discharge.

Discovery has been completed, and Defendants have filed a Motion for Summary Judgment.

(ECF No. 65). Plaintiff has also filed a Partial Motion for Summary Judgment. (ECF No. 70).

The Court will address both motions in this opinion. Presently, Defendants' Motion for

Summary Judgment and Plaintiff's Motion for Partial Summary Judgment have been fully

briefed, and both Motions are ripe for decision. For the reasons stated below, Plaintiff's Partial

Motion for Summary Judgment will be denied, and Defendants' Motion for Summary Judgment will be granted in full.

## I.     Statement of Facts

Plaintiff, Ethel Hayden, a Black woman who was 83 years old when this lawsuit was brought, began working at Allegheny Valley Hospital ("AVH") in 1978 as a sewing room assistant. (ECF No. 81, at 1). During the relevant time period to this case, Ms. Hayden worked as a Patient Access Coordinator ("PAC") in the Patient Registry Department at AVH. (*Id.*). On February 18, 2020, Ms. Hayden resigned from her position as a PAC. (*Id.*). At the time of her resignation, Ms. Hayden's supervisors included Lori Brown, Patient Access Manager; Tracey Stello, Patient Access Supervisor; and Anna Kowal, Patient Access Supervisor. (*Id.*). PACs are members of SEIU Healthcare Pennsylvania, CTW, CLC ("Union") and they are subject to a collective bargaining agreement. (ECF No. 81, at ¶¶ 29-30). Between 2018 and 2020, PACs adopted Scheduling guidelines and elected a Scheduling Committee, consisting of a group of PACs who prepared the schedule. (*Id.* ¶ 31). In 2018, the AVH implemented the EPIC recordkeeping system, and all PACs had to enter patient's records through the EPIC system. (*Id.* ¶¶ 23-24). After EPIC was implemented, in addition to other locations, PACs began staffing the hospital's greeter's desk, a position formerly staffed by security officers. (*Id.* ¶ 16). PACs at the greeter's desk were also required to utilize the EPIC system. (*Id.*). Shift locations were assigned based upon the hospital's need, and PAC seniority (ECF No. 71-11, at 1). Ms. Hayden had difficulties adjusting to the EPIC system, and she was provided with additional training by AVH, in addition to the training that she and other PACs received. (*Id.* ¶¶ 62-63). Ms. Hayden was counseled concerning her difficulties with understanding the EPIC system, and she received various warnings. (*Id.* ¶ 67).

Due to her difficulty with learning the EPIC system, and in conjunction with her other medical problems, Ms. Hayden submitted various medical accommodation requests. On January 7, 2019, Ms. Hayden submitted a medical accommodation request to be transferred to the greeter's desk, because there "are less things to remember," and she stated that the change to EPIC was "complicated" for her. (*Id.* ¶ 73-74). AVH denied this request. (*Id.* ¶ 77). On April 22, 2019, Ms. Hayden submitted a second medical accommodation request to work at the greeter's desk. (*Id.* ¶¶ 78-79). On June 20, 2019, Ms. Hayden filed her first EEOC charge with the EEOC. (ECF No. 2, at Ex. A). On July 16, 2019, Ms. Hayden submitted a third medical accommodation request for "a department section transfer and [a] fixed schedule" and for a transfer to the greeter's desk. (*Id.* ¶ 92-93).

On September 25, 2019, Ms. Hayden received a warning for failing to complete a mandatory training. (*Id.* ¶ 97). Ms. Hayden informed Ms. Stello that she was having technology issues, such that she had been unable to complete the training. (*Id.* ¶ 98). On November 6, 2019, Ms. Stello emailed Ms. Hayden and notified her that the warning would be revoked, because Ms. Hayden had experienced the reported technology difficulties. (*Id.*). On November 1, 2019, Ms. Hayden received another warning, because of her violations of AVH's attendance policy. (ECF No. 69-1, at 146-47).[1] On December 5, 2019, after Ms. Stello received confirmation from Health Services that Ms. Hayden's absences from September 25, 2019 to October 2, 2019 were excused as medical leave, Ms. Stello emailed revoking the warning. (ECF No. 68-1, at Ex. 15). On October 22, 2019, Ms. Hayden submitted another request for medical accommodation, seeking to work exclusively at the greeter's desk, because she could not stand for long periods of time. (*Id.* ¶ 121-

---

[1] The disciplinary action report indicated that Ms. Hayden violated AVH's attendance policy on 12/12/19, 2/22/19, 9/26, 27, 29 & 30/19, 10/1, 11, & 12/19. (ECF No. 68-1, at Ex. 14).

122). In response to this request, on January 3, 2020, AVH allowed Ms. Hayden to sit for her entire shift, but Ms. Hayden was not assigned exclusively to the greeter's desk. (ECF No. 82-12).

In 2018, after a coworker complained that Ms. Hayden always had Wednesdays off, Ms. Hayden began to be scheduled to work on Wednesdays. Ms. Hayden had previously requested and was granted Wednesdays off to attend bible study by a prior manager. (ECF No. 69-1, at 166-169). The scheduling guidelines for PACs allowed for two request-off days per month, in addition to two vacation days, plus the ability to switch shifts with coworkers. (ECF No. 81, at ¶ 113-114). Ms. Hayden utilized these methods to be able to attend bible study when she was scheduled to work on a Wednesday. On October 18, 2019, Ms. Hayden submitted a religious accommodation request to not be scheduled to work on Wednesdays. (*Id.* ¶ 119). This request was eventually granted by AVH. (*Id.* ¶ 134). Ms. Hayden requested this accommodation to be given to her in writing, but Benjamin Brewer, Health Systems Director for the Union, informed her that it was not the Union's custom to do so. (*Id.* ¶ 138).

Throughout the more than forty years that Ms. Hayden worked at AVH, she alleges that she was subjected to various instances of discriminatory conduct related to her race, age, religion, and disabilities. These alleged events are discussed in more detail in the sections below.

## II.     Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an

effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III.  Discussion
#### A.  Scope of the EEOC Charge

In this Court's March 15, 2022 Opinion, this Court noted that "in order to include a claim in a district court action that was not included in the original EEOC charge, there must be a

'close nexus' between the facts alleged in the administrative charge and any newly raised claim." (ECF No. 28, at 15). If there is a close nexus between the facts alleged in the administrative charge and a newly raised claim, then the new claim is administratively exhausted. In her second EEOC charge, filed on May 19, 2020 ("2020 EEOC Charge"), Ms. Hayden only checked the "retaliation" box, alleging that after she filed her first EEOC charge on June 20, 2019 ("2019 EEOC Charge")[2], she was discriminated against in retaliation. (ECF No. 30-1, at 1). In the 2020 EEOC charge, she also alleged that she "was subjected to a continuing hostile work environment," which caused her to retire from the hospital. (*Id.*). In its Memorandum Opinion, this Court found that only the retaliation and hostile work environment claims at Counts II, III, IV, and V of the First Amended Complaint were actionable, as these were the only claims found to be within the investigative scope of the EEOC Charge, and therefore administratively exhausted. (ECF No. 28, at 23-24).

In Ms. Hayden's Second Amended Complaint, she alleges discrimination and accommodation claims, based upon race, age, religion, and disability under Title VII, the ADEA, and the ADA. After reviewing the claims and evidence again, the Court's findings, concerning the scope of the 2020 EEOC Charge, persist at this stage of the case. Ms. Hayden's discrimination and failure to accommodate claims, based upon race, age, religion, and disability at Counts I, II, and III of the Second Amended Complaint, were not administratively exhausted. As such, Defendants Motion for Summary Judgment will be granted as to all these claims. Ms. Hayden's retaliation claims at Counts I, II, and III of the Second Amended Complaint, as well as

---

[2] In Ms. Hayden's 2020 EEOC Charge, she states that the 2019 EEOC Charge was filed "on or about June 18, 2019." (ECF No. 30-1). In her Second Amended Complaint, she states that the 2019 EEOC Charge was filed on June 20, 2019. (ECF No. 30, at ¶ 7). However, the EEOC document entitled, "Notification & Acknowledgement of Dual-Filed Charge," provided as support for Ms. Hayden's initial Complaint, (ECF No. 1), indicates that she filed the 2019 EEOC Charge on June 20, 2019. (ECF No. 2, at Ex. A).

the hostile work environment and constructive discharge claims at Counts VI, and V, are the only actionable claims available as within the scope of the 2020 EEOC charge. Thus, in this opinion, the Court will only address the retaliation, hostile work environment, and constructive discharge claims brought under the various statutes.

### B.  Retaliation Claims Under Title VII, the ADEA, and the ADA

Ms. Hayden brings retaliation claims against Defendants under Title VII, the ADEA, and the ADA based, upon her race, religion, age, and disability. Defendants argue that Ms. Hayden fails to establish a prima facie case for any of her retaliation claims. (ECF No. 66, at 9, 17, 21). Ms. Hayden argues that she established a genuine issue of material fact as to all her retaliation claims. (ECF No. 84, at 19-21).

To establish claim for retaliation under Title VII, the ADEA, and the ADA, Ms. Hayden must first satisfy her prima facie burden by demonstrating that (1) she engaged in a protected activity; (2) the Defendants took action that a reasonable employee would find to be materially adverse in that it might have dissuaded a reasonable worker from making a complaint; and (3) a causal connection existed between the protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 342-42 (3d Cir. 2006); *See also Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

### i.      Protected Activities

For an employee's complaint to be a protected activity, as required by the various discrimination statutes, he or she must hold an objectively reasonable belief, in good faith, that

the activity opposed is unlawful. *Romero v. Allstate Ins. Co.*, 3 F. Supp. 3d 313, 321 (E.D. Pa. 2014) (citing *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)).

In Ms. Hayden's 2020 EEOC Charge, the only protected activity mentioned is the 2019 EEOC Charge. Specifically, Ms. Hayden stated:

> I believe that Respondent discriminated against me in retaliation for having filed a previous charge of employment discrimination [] in violation of Title VII of the Civil Rights Act of 1964, as amended, (Title VII), the Age Discrimination in Employment Act (ADEA)[,] and/or the Americans with Disabilities Act, as amended (ADA).

(ECF No. 30-1). As the 2019 EEOC Charge is the only protected activity mentioned by Ms. Hayden in her 2020 EEOC Charge, this is the only protected activity that was administratively exhausted. Therefore, any other protected activities mentioned by Ms. Hayden in her briefings were not properly administratively exhausted. As such, the only recognizable protected activity in this case is the 2019 EEOC Charge. Defendants have conceded that the 2019 EEOC charge was a protected activity. (ECF No. 66, at 9-10).

### ii.    Adverse Actions and Causal Connection

An adverse employment action is any action "that alters the terms, conditions or privileges of employment and includes actions that are more than trivial or minor changes in an employees' working conditions, such as a suspension without pay and transfer to an undesirable position." *Wicther v. Sodexho, Inc.*, 247 Fed Appx. 328, 331 (3d Cir. 2007). When it comes to retaliation, the plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Yan Yan v. Pennsylvania State Univ.*, 529 Fed. Appx. 167, 195 (3d Cir. 2013).

To establish a causal connection, Ms. Hayden must demonstrate "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. Deflaminis,* 480 F.3d 259, 267 (quoting *Farrell v. Planters LifeSavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). "[T]emporal proximity alone [is] insufficient to establish the necessary causal connection when the temporal relationship is not unusually suggestive.'" *Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001) (quoting *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 280 (3d Cir. 2000)). The Third Circuit has found that timeframes of three months, and even less in some cases, are not unusually suggestive. *Kilpatrick v. Sec'y*, *U.S. Dep't of Veterans Affairs*, 754 F. App'x 123, 126-127 (3d Cir. 2018) (finding that both the time period of six weeks and 3 months were not "unusually suggestive of retaliatory motive."); *Thomas-Taylor v. City of Pittsburgh*, 605 F. App'x 95, 99 (3d Cir. 2015) (finding that one month was "not close enough to support a finding of causation without more").

Absent a temporal causal connection, another way to establish a causal connection is to show that there was intervening antagonism, retaliatory animus, or inconsistencies in the employer's proffered reasons for taking the adverse action. *Id.* (citing *Ferrell*, 206 F.3d at 279-281). "Intervening antagonism or retaliatory animus must have risen at the same time of or after the protected activity . . . If the plaintiff cannot show that the relationship in question became 'qualitatively different' after the protected activity, he cannot meet his burden . . . ." *Id.* (citing *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233-34 (3d Cir. 2007).

In her Second Amended Complaint, Ms. Hayden alleged various events that she considered were retaliatory conduct, the Court will address each of them in turn.

### 1. Disciplinary Action 1

In Count I of the Second Amended Complaint, entitled Disciplinary Actions, Ms. Hayden brings retaliation claims under Title VII and the ADEA for a disciplinary action taken against her on September 25, 2019 ("Disciplinary Action 1"). Defendants argue that Ms. Hayden failed to establish that Disciplinary Action 1 was an adverse action or that it was causally connected to the 2019 EEOC Charge. (ECF No. 66, at 9.). Ms. Hayden argues that the record establishes the existence of genuine issues of material facts supporting her retaliation claim related to Disciplinary Action 1. (ECF No. 84, at 19-20).

Disciplinary Action 1 was a warning given to Ms. Hayden by management, because she failed to complete a mandatory training requirement. (ECF No. 69-1, at 135-38); (ECF No. 68-1, at Ex. 13). On October 22, 2019, Tracey Stello emailed Ms. Hayden and cc'd Lori Brown, Teresa Moore, and Mary Esgro, Labor Relations Consultant and liaison to the Union. (ECF No. 68-1, at Ex. 13). This email relayed that Ms. Hayden had not completed her mandatory Health Care Environment Training. (*Id.*) On October 29, 2019, Ms. Hayden emailed Ms. Stello, explaining that she tried to finish the training, but that she was having difficulties with the computer program, in that it would not allow her to finish the training. (*Id.*) In response, on November 6, 2019, Ms. Stello emailed Ms. Hayden, notifying her that Disciplinary Action 1 was being expunged, because of Ms. Hayden's reported technical difficulties with finishing the training. (*Id.*). Ms. Stello did not cc Ms. Brown or Ms. Moore in the revocation email. (*Id.*).

In her deposition, Ms. Hayden testified that her claim, related to Disciplinary Action 1, is not based upon the warning itself; rather, Ms. Hayden complains that, when Ms. Stello emailed Ms. Hayden to revoke the action, she did not copy all who were included in the original email.

(ECF No. 69-1, at 144). Ms. Hayden testified that she did not lose any pay or benefits, or experience any change in schedule, or any suspension because of said Disciplinary Action 1. (*Id.* at 144-145).

Disciplinary Action 1 does not constitute an adverse employment action, because Ms. Hayden did not suffer any significant change that altered the terms, conditions, benefits of her employment as a result. In fact, Disciplinary Action 1 was revoked, and expunged from Ms. Hayden's record; thus, there was no adverse effect on Ms. Hayden's employment. *See Williams v. PHRC* 2016 WL 6834612, at * 17 (W.D. Pa. 2016) ([W]ritten reprimands not resulting in a material change in the terms or conditions of employment do not constitute adverse employment actions.") (internal citations omitted). Thus, Disciplinary Action 1 was not an adverse employment action sufficient to support her retaliation claim.

Even if Ms. Hayden had established that Disciplinary Action 1 was an adverse action, she cannot establish that it was causally connected to the 2019 EEOC Charge. First, Disciplinary Action 1 occurred more than three months after Ms. Hayden filed her 2019 EEOC Charge. A three-month passage of time between the 2019 EEOC Charge, and Disciplinary Action 1 is not unusually suggestive that there was a retaliatory motive. *See Kilpatrick*, 754 F. App'x at 123.

Furthermore, Ms. Hayden also does not produce any record evidence that suggests that Disciplinary Action 1 was taken because of any retaliatory animus, or that there was any intervening antagonism, or any inconsistencies in the Defendants' reasons for taking the action. There is no issue that Ms. Hayden had not completed the mandatory training. Thus, the warning was properly issued. Ms. Hayden's explanation of her technical difficulties with the training

system was accepted by Ms. Stello and the warning was rescinded. As such, Ms. Hayden also fails to establish the causation element for her retaliation claim related to Disciplinary Action 1.

Therefore, Ms. Hayden has not met her burden to establish a genuine issue of material fact that Disciplinary Action 1 was an adverse action or that it was causally connected to her 2019 EEOC Charge. Defendants' Motion for Summary Judgment, as to Ms. Hayden's retaliation claims under Title VII and the ADEA related to Disciplinary Action 1 within Count I of the Second Amended Complaint, Disciplinary Actions, will be granted.

### 2. Disciplinary Action 2

In Count I of the Second Amended Complaint, entitled Disciplinary Actions, Ms. Hayden also brings retaliation claims under Title VII and the ADEA for a Disciplinary Action taken against her on November 1, 2019 ("Disciplinary Action 2"). Defendants argue that Ms. Hayden failed to establish that Disciplinary Action 2 was an adverse action or that it was causally connected to the 2019 EEOC Charge. (ECF No. 66, at 9.). Ms. Hayden argues that the record establishes the existence of genuine issues of material facts supporting her retaliation claim related to the Disciplinary Action 2. (ECF No. 84, at 19-20).

Disciplinary Action 2 involved a warning given to Ms. Hayden, concerning her multiple absences from work. (ECF No. 69-1, at 146-47); (ECF No. 68-1, at Ex. 14). The dates when Ms. Hayden had allegedly violated Defendants' attendance policy, as shown in the disciplinary action report and which served as the warning to Ms. Hayden, were 12/12/19, 2/22/19, 9/26, 27, 29 & 30/19, 10/1, 11 & 12/19. (ECF No. 68-1, at Ex. 14). Ms. Hayden was aware of the hospital's attendance policy, she recognized that anyone who violated the policy was given a warning, and she acknowledged that Ms. Stello followed that policy when she gave Ms. Hayden her verbal

warning. (ECF No. 69-1, at 152). That said, upon receipt of the warning, Ms. Hayden informed Ms. Stello that she had been previously approved by employee health to take off work for medical leave on some of the days indicated in the disciplinary action report. (*Id.* at 148). Thereafter, Ms. Stello confirmed that Ms. Hayden's medical leave had been approved for September 25, 2019 through October 2, 2019. (ECF No. 68-1, at 15). Therefore, on December 5, 2019, Ms. Stello emailed Ms. Hayden and notified her that "the verbal warning [Ms. Hayden] received [was] rescinded." (*Id.*).

Ms. Hayden argues that Disciplinary Action 2 was selective discipline and disparate treatment by her supervisors, because she informed Ms. Stello of the days that she would be missing before she was reprimanded. (ECF No. 69-1, at 148-49). She further argues that Ms. Stello did not call her and ask why she did not appear for work on the days she was absent, which is custom when others are absent. (*Id.*) Ms. Hayden testified, "If she would have called me at home to see why I wasn't there, she would have known that. Everybody else gets a call at home even if they are even five minutes late getting on the job. They're [management] on the phone calling and saying, are you sick? Is anything wrong? Why aren't you here?" (*Id.* at 152-53).

Disciplinary Action 2 was not an adverse employment action. Disciplinary Action 2 was revoked on December 5, 2019, and it did not materially affect or alter Ms. Hayden's conditions, terms, or benefits of her employment, nor does Ms. Hayden argue that such was the case. Thus, Disciplinary Action 2 was not a sufficient adverse employment action to support her retaliation claim.

Even if Ms. Hayden had established that Disciplinary Action 2 was an adverse action, she cannot establish that it was causally connected to the 2019 EEOC Charge. First, Disciplinary Action 2 occurred more than three months after Ms. Hayden filed her 2019 EEOC Charge. Next, Ms. Hayden also does not produce any record evidence that suggests that Disciplinary Action 2 was taken because of any retaliatory animus, or that there was any intervening antagonism, or any inconsistencies in the Defendants' reasons for taking the action. Ms. Hayden admits that there were clear policies that described what conduct would be disciplined, and even she admits that Ms. Stello followed those policies when disciplining her. (ECF No. 69-1, at 152). Further, once Ms. Stello received confirmation of Ms. Hayden's approved absences, Disciplinary Action 2 was rescinded. Ms. Hayden has provided no record evidence to establish that Disciplinary Action 2 was causally connected to the 2019 EEOC Charge. Thus, Ms. Hayden also fails to satisfy the causation element for her claims of retaliation related to Disciplinary Action 2.

Therefore, Ms. Hayden has not met her burden to establish a genuine issue of material fact that Disciplinary Action 2 was an adverse action or that it was causally connected to her 2019 EEOC Charge. Defendants' Motion for Summary Judgment, as to Ms. Hayden's retaliation claims under Title VII and the ADEA related to Disciplinary Action 2 within Count I of her Second Amended Complaint, Disciplinary Actions, will be granted.

### 3. Scheduled to Work on Wednesdays

In Count II of the Second Amended Complaint, entitled Religious Accommodation, Ms. Hayden also brings a retaliation claim under Title VII, because Defendants began scheduling her to work on Wednesdays, the day she had regularly been scheduled off to attend bible study, which caused her to be "forced to request vacation and personal leave on a weekly basis to attend

Bible Study." (ECF No. 30, at 7). Defendants argue that Ms. Hayden cannot establish a prima facie case for retaliation related to this alleged adverse action, because she cannot demonstrate that a causal connection exists between this action and the 2019 EEOC Charge. (ECF No. 66, at 17). Ms. Hayden argues that the record establishes a genuine issue of material fact related to this alleged retaliatory conduct. (ECF No. 84, at 19-20).

For well over a decade, Ms. Hayden had been routinely scheduled to be off on Wednesdays to attend bible study. (ECF No. 69-1, at 165). In 2018, AVH began to schedule her on Wednesdays, and Ms. Hayden alleges that it was because another employee complained about her never being scheduled to work on Wednesdays. (*Id.* at 127-128). Ms. Hayden admits that her past schedule to be off on Wednesdays was never pursuant to any formal accommodation through the Human Resources Department at the hospital; rather, it was established by an oral arrangement granted from one of her prior managers. (*Id.* at 166-169). In 2006, when Ms. Stello began making the schedules, she adhered to the then existing schedules, and she continued to not schedule Ms. Hayden to work on Wednesdays. (ECF No. 68-4, at 31). Defendants claim that Ms. Stello did not know the historical reason for why Ms. Hayden was not scheduled to work on Wednesdays when she took over scheduling. (*Id*). Ms. Hayden argues that her religious beliefs were well known among her co-workers, emphasizing that she once had a Christmas poster torn down by Yvette Pasko. (ECF No. 69-1, at 128). In 2018, when Ms. Hayden began to be scheduled to work on Wednesdays, according to the scheduling guidelines, she was able to request off two days per month. (ECF No. 81, at ¶ 113). Ms. Hayden could also use vacation days for the other two Wednesdays each month, or she could trade her shifts with another coworker, which she had done in the past. (*Id.* ¶¶ 115-116). When Ms. Hayden began requesting

individual Wednesdays off, utilizing scheduling and vacation guidelines, her requests were always granted, and she was never disciplined for taking said Wednesdays off. (*Id.* ¶ 117).

As to the element of causation between the Wednesday scheduling issue and Ms. Hayden's claim of retaliation due to her 2019 EEOC Charge filing, Ms. Hayden does not meet her burden, because these scheduling events occurred before Ms. Hayden brought her 2019 EEOC Charge.

Therefore, Ms. Hayden has not met her burden to establish a genuine issue of material fact that the alleged retaliatory conduct, being scheduled to work on Wednesdays, was causally connected to her 2019 EEOC Charge. Defendants' Motion for Summary Judgment, as to Ms. Hayden's retaliation claim under Title VII related to said retaliatory conduct within Count II of her Second Amended Complaint, Religious Accommodation, will be granted.

### 4. Written Accommodation

In Count II of the Second Amended Complaint, entitled Religious Accommodation, Ms. Hayden brings a retaliation claim under Title VII, because, after they granted her October 18, 2019 religious accommodation request, Defendants "refused to offer an official accommodation in writing." (ECF No. 30, at 7). Defendants argue that Ms. Hayden cannot establish a prima facie case related to this alleged retaliatory conduct, because said conduct does not qualify as an adverse action. (ECF No. 66, at 18). Ms. Hayden argues that the record establishes a genuine issue of material fact related to this alleged retaliatory conduct. (ECF No. 84, at 19-20).

On October 18, 2019, Ms. Hayden sent the Scheduling Committee a written request for a religious accommodation to not be scheduled to work on Wednesdays so she could attend bible

study. (ECF No. 81, at ¶ 118). On November 7, 2019, Ms. Esgro, Labor Relations Consultant and liaison to the Union, emailed Mr. Brewer, Health Systems Director for the Union, requesting Union approval of the religious accommodation request. (ECF No. 69-5, at 3). On December 9, 2019, Mr. Brewer contacted local Union representatives and asked whether they would agree to Ms. Hayden's request. (*Id.* at 4). Ms. Hayden argues that Union approval was never required for the religious accommodation. On December 13, 2019, the Union approved Ms. Hayden's religious accommodation. (*Id.*). On December 23, 2019, Claudette Rhone, Ms. Hayden's granddaughter, asked Mr. Brewer if Ms. Hayden would receive written confirmation of her religious accommodation approval. (*Id.* at 5). Mr. Brewer responded, informing Ms. Rhone that written confirmation from the Union is not typical. (*Id.*).

Even though Ms. Hayden was not given written confirmation, her October 18, 2019 religious accommodation request was eventually granted after being approved by the Union. (69-1, at 174). Failure to provide written approval of the religious accommodation did not materially affect Ms. Hayden's employment at AVH; and therefore, was not an adverse action. Thus, Ms. Hayden has provided no record evidence to establish that Defendants took an adverse action against her when they did not provide written confirmation of her religious accommodation.

Therefore, Ms. Hayden has failed to establish a prima facie case for retaliation based upon Defendants' refusal to issue written confirmation of her religious accommodation request, because this alleged retaliatory conduct does not qualify as an adverse action. Defendants' Motion for Summary Judgment, as to Ms. Hayden's retaliation claim under Title VII within Count II of her Second Amended Complaint, Religious Accommodation, will be granted.

### 5.  Medical Accommodation Request

In Count III of the Second Amended Complaint, entitled Reasonable Accommodation, Ms. Hayden brings a retaliation claim against Defendants under the ADA, because Defendants failed to schedule her to work exclusively at the greeter's desk as she requested through her October 22, 2019 medical accommodation request. (ECF No. 30, at ¶ 77). Defendants argue that Ms. Hayden fails to establish a prima facie case for retaliation under the ADA, because Ms. Hayden did not establish that Defendants' refusal to schedule Ms. Hayden to work exclusively at the greeter's desk was an adverse action. (ECF No. 66, at 21). Ms. Hayden argues that she established a genuine issue of material fact that said refusal is sufficient to establish a retaliation claim. (ECF No. 84, at 21).

Ms. Hayden submitted a request for reasonable accommodation on October 22, 2019, wherein she asked to work exclusively at the greeter's desk. (69-1, at 187).  On October 30, 2019, Ms. Hayden provided medical documentation from her doctor concerning this request.[3] (ECF No. 71-2, at 3). This documentation stated that Ms. Hayden "can currently work[;] however[,] when incapacitated she can't stand for long periods of time." (*Id*.). This medical report did not provide or convey that Ms. Hayden must sit for her entire shift or that she must sit only at the greeter's desk. (*Id*.). Ms. Hayden testified that, after management received her doctor's note, Ms. Hayden was scheduled to work at the greeter's desk for "two weeks, and then [Ms. Brown] took it back." (69-1, at 190-94). Ms. Hayden further testified that, after these two weeks, Ms. Brown told her she would also have to work in the ER department, which required Ms. Hayden to push around a large cart, if she wanted to continue working at the greeter's desk. (*Id.* at 126-27). Ms. Hayden was never scheduled to exclusively work at the greeter's desk.

---

[3] The doctor's note is dated November 13, 2019, but there are multiple facsimile timestamps on the document with dates preceding the written date. The Court will use the earliest fax date that is stamped on the note, October 30, 2019.

However, Ms. Hayden admitted that she was eventually permitted to sit for her entire shift. (*Id.* at 191). On January 3, 2020, Ms. Hayden was told that she was permitted to remain seated for her entire shift. (ECF No. 82-12).

Notwithstanding the passage of time from Ms. Hayden's October 22, 2019 medical accommodation request and the final accommodation on January 3, 2020, the Defendants made interim efforts to appropriately respond to her request by contacting the Union for their approval. Ms. Hayden was eventually permitted to remain seated for her entire shift on January 3, 2020. Ms. Hayden did not provide medical input for her request until her doctor's note on October 30, 2019. The doctor's note only related that Ms. Hayden could not stand for long periods of time when incapacitated. The doctor did not opine that Ms. Hayden must be assigned exclusively to the greeter's desk or that she had to sit for her entire shift. AVH's January 3, 2020 communication, permitting Ms. Hayden to remain seated for her entire shift, not only complied with, but exceeded the suggestions from Ms. Hayden's doctor. Thus, AVH's decision to not schedule Ms. Hayden exclusively to the greeter's desk was not an adverse employment action, because they accommodated her medical complications with standing. Ms. Hayden suffered no material change that altered the terms, conditions, or privileges of her employment. In fact, AVH's action improved her conditions from her prior status quo. Thus, no adverse action is present.

Further, Ms. Hayden fails to establish that Defendants' decision regarding Ms. Hayden's October 22, 2019 medical accommodation request is causally connected to her 2019 EEOC Charge. Ms. Hayden filed her 2019 EEOC Charge on June 20, 2019. Ms. Hayden's October 22, 2019 medical accommodation request was made more than four months after she filed her 2019 EEOC Charge, and Defendants' disposition on the medical accommodation request was made at

an even later date. A more than four-month passage of time between Ms. Hayden's 2019 EEOC

Charge and October 22, 2019 medical accommodation request and disposition of the same, is not

unusually suggestive that there was a retaliatory motive. *See Kilpatrick*, 754 F App'x at 123. Ms.

Hayden also fails to produce any record evidence that suggests the disposition of her October 22,

2019 medical accommodation request was taken because of any retaliatory animus, or that there

was any intervening antagonism, or any inconsistencies the Defendants' reasons for taking the

action. Thus, no causal connection exists.

Therefore, Ms. Hayden has failed to establish a prima facie case for retaliation related to

her October 18, 2019 medical accommodation request. Defendants' Motion for Summary

Judgment, as to Ms. Hayden's ADA retaliation claim within Count III of the Second Amended

Complaint, Reasonable Accommodation, will be granted.

### C. Count III: Reasonable Accommodation – Ms. Hayden's Partial Motion for Summary Judgment

Ms. Hayden brings a Motion for Partial Summary Judgment related to her ADA failure to

accommodate claim contained at Count III, Reasonable Accommodation, of the Second

Amended Complaint. (ECF No. 70). In said motion, Ms. Hayden argues that the record

establishes that Defendants failed to reasonably accommodate her, because they failed to assign

her to the greeter's desk when such would cause no undue hardship on Defendants. (*Id.* at 3).

Defendants argue that they never violated the ADA, and that all Ms. Hayden's reasonable

accommodation claims fail, because she did not exhaust her administrative remedies. (ECF No.

78).

This Court ruled in its March 13, 2022 Memorandum Opinion, that the scope of Ms.

Hayden's claims are limited to the retaliation claims at Counts I, II, and III, because she only

20

checked the "retaliation" box on her 2020 EEOC Charge. Accordingly, Ms. Hayden's claims for failure to accommodate under the ADA were not administratively exhausted. Therefore, the only claim actionable at Count III of the Second Amended Complaint, Reasonable Accommodation, is Ms. Hayden's retaliation claim.

As such, Ms. Hayden's Motion for Partial Summary Judgment, based upon her ADA failure to accommodate claim, will be denied.

### D.  Count IV: Hostile Work Environment Claim

Ms. Hayden brings a hostile work environment claim against Defendants, alleging that she was subjected to a hostile work environment from 2018 until her resignation on February 18, 2020. (ECF No. 30). Defendants argue that Ms. Hayden cannot establish any hostile work environment claim based on her race, age, religion, or disability. (ECF No. 66, at 25-28). Defendants maintain that Count IV needs to be analyzed independently, as hostile work environment claims based upon each respective protected class. (*Id.*) Ms. Hayden argues that genuine issues of material fact exist related to her hostile work environment claims. (ECF No. 84, at 15). Ms. Hayden further argues that the hostile work environment claims should be assessed as a whole, such that they should not be assessed independently for each individual protected class. (*Id.* at 16).

To succeed on a hostile work environment claim, the plaintiff must establish that (1) the employee suffered intentional discrimination because of his/her protected class, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). In conducting this analysis, courts must evaluate all the circumstances,

including, "the frequency of the conduct, the severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 23 (1993). Further, Title VII "protects a plaintiff only as to harassment based on discrimination against a protected class." *Ullrich v. United States Secy. Of Veterans Affairs*, 457 Fed. Appx. 132, 140 (3d. Cir. 2012). "Many may suffer severe or pervasive harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Id.* (internal quotation marks and citations omitted). Title VII is not a "general civility code" and "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Onacle v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).

A hostile work environment claim under the ADA follows a similar test. In order to establish a prima facie case for hostile work environment under the ADA, a plaintiff must show that "(1) [plaintiff] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [defendant] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton v. Mental Health Assoc.*, 168 F.3d 661, 668 (3d Cir. 1999).

Under either test, a plaintiff must establish that the alleged harassing actions relate to their protected category and that they were severe and pervasive. "Severity and pervasiveness 'are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive.'" *Washington v. SE Pa. Transp. Auth.*, 2021 WL 2649146, at

*24 (E.D. Pa. 2021) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). "In analyzing a hostile work environment claim, the Court may consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Laye v. Potter*, 2006 WL 1617777, at *5 (W.D. Pa. Jun. 2, 2006) (citing *Harris*, 510 U.S. at 23.). "The threshold for pervasiveness and regularity of discriminatory conduct is high." *Greer v. Modelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). "[O]ffhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim.'" *Caver v. City of* Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "To survive summary judgment, a plaintiff must present some evidence that the workplace was permeated with discriminatory intimidation, ridicule, or insult that was so severe or pervasive that it altered the conditions of employment and created an abusive working environment." *Mazur v. SW Veterans Ctr.*, 9 WL 4345726, at *33 (W.D. Pa. Sept. 12, 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

The continuing violation doctrine allows for discriminatory events that occurred outside the applicable statute of limitations period to be considered if one related event is within said limitations period. "Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Mandell*, 706 F.3d at 165 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice and cannot be said to

occur on any particular day." (*Id.*). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are a part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* at 165-66.

Ms. Hayden's argument, that each of the alleged discriminatory acts, no matter which protected class they are related to, must be assessed together in determining the hostile work environment claim, is a misunderstanding of the scope of hostile work environment claims and the impact of the continuing violation doctrine upon such claims. Courts may consider all alleged related discriminatory actions if one of the actions falls within the statute of limitations period, yet consideration of the prior actions are limited to actions within the scope of the specific protected class germane to the hostile work environment claim. This conclusion is supported by the language of the continuing violation doctrine itself, which holds that "the plaintiff must show that all acts which constitute the claim are a part of the same unlawful employment practice" for the doctrine to apply. *Mandell*, 706 F.3d at 165 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). The claim at issue here is Ms. Hayden's hostile work environment claim. The first element of a hostile work environment claim is that the plaintiff suffered intentional discrimination because of her protected class. *Mandel*, 706 F3d at 168. The continuing violation doctrine's emphasis on the existence of a pattern between alleged actions, coupled with the requirement for intentional discrimination because of her protected class, suggests that the pattern required to aggregate alleged discriminatory actions is that the alleged discriminatory actions must relate to a specific protected class. Thus, the same "unlawful employment action," as regards a hostile work environment claim, is conduct or actions that are related to a specific protected class.

Ms. Hayden brings hostile work environment claims, based on her race, religion, age, and disability. So, in assessing Ms. Hayden's hostile work environment claims, the Court will assess the existence of a hostile work environment claim as related to the respective discriminatory conduct germane to each distinct protected class.

In Ms. Hayden's Second Amended Complaint, she alleges six specific incidents to support her hostile work environment claim. These incidents are described as follows:

1. On June 11, 2019, a coworker, in front of others, declared that she planned to report Ms. Hayden to Human Resources "for no apparent reason." (ECF No. 30, at ¶ 103).

2. On June 17, 2019, Ms. Hayden asked her coworker a question, and the coworker responded, "I already answered this question before" in an "aggrieve[d] tone" in front of a customer. (*Id.* ¶ 104).

3. On July 12, 2019, another coworker asked Ms. Hayden why she continued to "take crap" from managers and then stated to Ms. Hayden, "Why don't you quit and leave with some dignity." (*Id. ¶* 105).

4. On July 25, 2019, Ms. Hayden attended a mandatory meeting and felt "surrounded" by the "excessive amount of management officials" at a meeting. (*Id* ¶ 106).

5. On July 30, 2019, a manager told Ms. Hayden, "How's that for a CORE violation" at a meeting discussing a disciplinary action. (*Id.* ¶ 107).

6. On February 18, 2020, Ms. Hayden was informed by a security guard that a coworker told a patient that Ms. Hayden was old and did not know how to do her job. (*Id.* ¶ 108).

During Ms. Hayden's deposition, she described more events that she argues support her hostile work environment claims. Ms. Hayden alleged the following:

1. About five years ago, two coworkers stopped talking to her. Ms. Hayden alleged that Ms. Brown pressured one of the coworkers to avoid her because Ms. Hayden called the coworker a "smarty pants." (ECF No. 69-1, at 195-197).

2. Ms. Hayden was not provided breaks for lunch and dinner. (*Id.* at 200).

3. Ms. Pasko told Ms. Hayden that she had to do everything that she said if she wanted to be assigned to the greeter's desk. (*Id.*) Ms. Hayden could not recall when Ms. Pasko said his to her nor did she report it to anyone. (*Id.*).

4. Ms. Pasko asked Ms. Hayden "four times in a row about sending an email. (*Id.* at 220-21). Ms. Hayden could not recall when Ms. Pasko said this to her, nor did she report it to anyone. (*Id.*).

5. Ms. Stello told Ms. Hayden, "if [she] thought [she] was going to get the greeter's desk, [she] was not going to get it. (*Id.* at 221).

6. Ms. Hayden was told "every other day" that she was going to receive CORE violations without explanation about why. (*Id.* at 221-22).

During her deposition, Ms. Hayden attributed certain alleged conduct to specific protected classes. First, Ms. Hayden specified how she was discriminated against based upon her race. Ms. Hayden responded that she was not given daylight shift, even though she repeatedly asked for it. (*Id.* at 114). Ms. Hayden testified that she quit asking for daylight shift "six years before she quit," because she had been turned down for so long. (*Id.* at 115). Ms. Hayden alleges that she was also called a n****r by a coworker when she was a "middle ways of [] working at the hospital." (*Id.* at 117-18). Ms. Hayden never reported this event. (*Id.*). Ms. Hayden alleged that over 10 years ago, she was told, almost daily, that she only had her job because she is black. (*Id.* at 118). Ms. Hayden said that she reported this to her manager at the time, but nothing was done about it. (*Id.* a 119-20). Ms. Hayden also alleged that, over five years ago, a coworker told her that white people

26

lowered their value by dating black people. (*Id.* at 120). Ms. Hayden could not recall the name of this coworker; but she testified that she reported the incident to her manager when it occurred. (*Id.*). Ms. Hayden also alleged that Ms. Pasko often called her "missy." (*Id.* at 117). Although not discussed in her deposition, Ms. Brown emailed Ms. Stello and relayed that, on February 11, 2019, Ms. Brown told Ms. Hayden that "the cafeteria and housekeeping doesn't use epic." (ECF No. 82-1). Additionally, on March 4, 2019, Ms. Stello emailed herself, and documented that when walking to Ms. Hayden's desk to speak with her about the schedule, Ms. Stello said, "I smell chocolate." (ECF No. 82-2).

Second, during her deposition, Ms. Hayden specified how she was discriminated against based upon her age. She felt that not being assigned "light duty," even though it was available, constituted age discrimination. (ECF No. 69-1, at 122-123). Ms. Hayden also alleged that Ms. Pasko asked her "every other day, every other week, when am I going to retire, when am I going to quit, when am I going to get out of here." (*Id.* at 123). Ms. Hayden reported this to management. (*Id.*). Ms. Hayden also alleged that on February 18, 2020, a security guard told her that he had heard her Ms. Pasko tell a patient that Ms. Hayden was "old" and "didn't know how to do her job." (*Id.* at 213-14). Ms. Hayden further alleged that the security guard would regularly meet around the greeter's desk and discuss Ms. Hayden, making similar remarks. (*Id.*).

Next, Ms. Hayden alleges that she experienced disability-related harassment. Ms. Hayden argues she was subjected to said harassment, when she was not given the medical accommodations that she requested many times. (*Id.* at 126-27).

After that, Ms. Hayden specified how she was harassed, based upon her religion. Ms. Hayden testified that she put up a Christmas poster and Ms. Pasko took it down because someone

was offended by it. (*Id.* at 128). Ms. Hayden cannot recall when this happened, but she thinks it was more than five years ago. (*Id.*) Ms. Hayden alleged that after this occurred, Ms. Pasko put up Halloween decorations, which Ms. Hayden found offensive, but the Halloween decorations were not taken down. In 2018, Defendants began to schedule Ms. Hayden to work on Wednesdays, which she previously had off to attend bible study. (*Id.* at 166-169). On October 18, 2019, Ms. Hayden formally requested to have Wednesdays off to attend bible study. (*Id.* at 169). On December 13, 2019, the Union approved Ms. Hayden's request and Defendants stopped scheduling Ms. Hayden to work on Wednesdays, so she could attend bible study. (*Id.* at 169). On December Ms. Hayden's granddaughter, Ms. Rhone, asked to have written confirmation of the accommodation, but was informed that such confirmation was not the custom of the Union. (ECF No. 69-5, at 5).

Finally, in Ms. Hayden's Second Amended Complaint, deposition, and briefings, she alleges discriminatory conduct that she does not attribute to any specific protected class, nor can they reasonably be attributed to any protected class based upon the facts and evidence provided. The Court considers such conduct to be facially neutral conduct. This facially neutral conduct includes numbers 1-5 of the allegations listed above that Ms. Hayden described in her Second Amended Complaint, and numbers 1-6 of the allegations listed above that Ms. Hayden described during her deposition. Some of the alleged discriminatory conduct that Ms. Hayden does attribute to a protected class are facially neutral, but for the sake of brevity and organization, we will consider them according to the protected class designated by Ms. Hayden.

**Hostile Work Environment – Race**

At Count IV of the Second Amended Complaint, Ms. Hayden brings a race-based hostile work environment claim. Defendants argue that Ms. Hayden cannot establish that she was subjected to a race-based hostile work environment, because the alleged relevant conduct is untimely, not related to her race, and not severe or pervasive enough. (ECF No. 66, at 25-27). Ms. Hayden argues that the totality of all alleged discriminatory events, related to all protected classes, must be considered together to establish a hostile work environment claim. (ECF No. 84, at 16).

For alleged discriminatory conduct to be timely before the Court, "[a] charge of discrimination [must be filed] with the EEOC within 300 days of the alleged unlawful employment practice." *Burgh v, Borough of Montrose,* 251 F.3d 465, 469 (3d Cir. 2001)). Under the continuing violations doctrine, to establish a hostile work environment claim, one of the alleged discriminatory acts must fall within the applicable limitations period. The 2020 EEOC Charge was brought on May 19, 2020. The most current alleged race related event occurred on March 4, 2019, when Ms. Stello said she "smelled chocolate." (ECF No. 82-2). This event preceded Ms. Hayden's 2020 EEOC Charge by 442 days. Thus, the most current alleged related event, Ms. Stello's chocolate comment, was untimely. Therefore, Ms. Stello's chocolate comment cannot be individually considered as an actionable race-related discriminatory act to trigger the application of the continuing violation doctrine to include any other alleged past race-related events.

As regards the other alleged past events attributed to her race, Ms. Hayden testified that a coworker called her the n-word a "middle ways of my working at the hospital." (ECF No. 69-1, at 117-18). Ms. Hayden worked at the hospital since 1978, meaning this event occurred approximately 20 years before her resignation. Ms. Hayden stopped asking for daylight shift "six years before she quit." (*Id.* at 117-120). Ms. Hayden was told that she got her job because she was black over 10 years ago. (*Id.*). She further testified that it was over 5 years ago when a coworker

told her that white people lowered their value by dating black people. (*Id.*). Lastly, Ms. Hayden never specifies the date when she was called "missy" by Ms. Pasko. All these purported events occurred before Ms. Stello's chocolate comment or Ms. Hayden did not provide a date for when they occurred. Thus, these events cannot be considered for Ms. Hayden's race-based hostile work environment claim, because they are not within the 300-day limitations period, and Ms. Stello's chocolate comment does not trigger the continuing violation doctrine.

As to the facially neutral events asserted by Ms. Hayden, she did not provide sufficient record evidence to establish that they occurred because of her race. A plaintiff cannot sustain a claim for hostile work environment based on race when no racial comments or actions are made. *Blango v. City of Phila.*, 2022 WL 17365249, at *7 (E.D. Pa. Dec. 1, 2022); *see also Ilori v. Carnegie Mellon Univ.*, 742 F. Sup. 2d 734, 757 (W.D. Pa. 2010) ("The plaintiff . . . must show some overt racially hostile words or conduct to signal the invidious nature of the facially neutral conduct.") (internal citations omitted). Ms. Hayden does not provide sufficient record evidence to establish that the facially neutral events described in her Second Amended Complaint, or the events about which she testified in her deposition, occurred because of her race. As such, these events do not qualify for consideration of her hostile work environment claim based upon race, and none of them factor into the timeline for application of the continuing violation doctrine.

Therefore, as none of the purported race related discriminatory events are within the 300-day period, and as Ms. Hayden fails to provide sufficient record evidence that the facially neutral events occurred because of her race, Defendants Motion for Summary Judgment will be granted as to Ms. Hayden's race-based hostile work environment claims.

i.     **Hostile Work Environment – Age**

At Count IV of her Second Amended Complaint, Ms. Hayden brings an age-based hostile work environment claim. Defendants argue that Ms. Hayden cannot establish an age-based hostile work environment claim, because the alleged actions are not severe or pervasive enough. (ECF No. 66, at 27). Ms. Hayden argues that the totality of all alleged discriminatory events, related to all protected classes, must be considered together to establish a hostile work environment claim. (ECF No. 84, at 16).

Ms. Hayden alleged two circumstances related to her age. First, on February 18, 2020, she alleges the security guard at AVH told her that her coworker said that she was old and did not know how to do her job. Second, that Ms. Pasko repeatedly asked Ms. Hayden "every other day, every other week" about when she would retire, quit, or "get out of here." (ECF No. 69-1, at 123).

Courts have found that isolated and sporadic comments such as these are not enough to be considered severe or pervasive. *Whitesell v. Dobson Communications.*, 2008 WL 474270, at *15-16 (W.D. Pa. 2008) (comments, including those which referred to plaintiff as "old lady" were not enough to be considered severe or pervasive), *aff'd in part,* 353 Fed. Appx. 715 (3d Cir. 2009); *see also Jenkins v. Knowledge Learning Corp.*, 2013 WL 3465191, at *5 (D.N.J. Jul 10, 2013) (plaintiff being "repeatedly asked if she was going to retire" along with other conduct was not enough to be considered severe or pervasive). According to the security guard, Ms. Hayden's coworker told a patient that Ms. Hayden was old once, there is no other evidence on the record to support that this occurred any other time. As to the frequent inquiries into when Ms. Hayden would retire, this conduct is not so severe that it would alter the conditions of Ms. Hayden's employment.

Thus, these two circumstances do not establish the necessary elements of severe or pervasive to support an age-based hostile work environment claim. Further, Ms. Hayden does not

provide sufficient record evidence to establish that the facially neutral events, as discussed above and as described in her Second Amended Complaint or about which she testified in her deposition, occurred because of her age.

As such, Defendants Motion for Summary Judgment will be granted as to Ms. Hayden's age-based hostile work environment claim.

### ii.     Hostile Work Environment – Religion

At Count IV of her Second Amended Complaint, Ms. Hayden brings a religion-based hostile work environment claim. Defendants argue that Ms. Hayden cannot establish a hostile work environment claim, because such claim is untimely, and because the conduct is not severe or pervasive. (ECF No. 66, at 28). Ms. Hayden argues that the totality of all alleged discriminatory events, related to all protected classes, must be considered together to establish a hostile work environment claim. (ECF No. 84, at 16).

Ms. Hayden alleged various incidents of religion-based discriminatory conduct. First, the incident when Ms. Pasko ripped down a Christmas poster that Ms. Hayden had hung up. (ECF No. 69-1, at 128). Ms. Hayden cannot remember when this occurred, but she thinks it was at least five years ago. (*Id.*). Next, sometime after she tore down the Christmas poster, Ms. Pasko put-up Halloween decorations, which Ms. Hayden found offensive. (*Id.* at 128-129). She admitted that she thought this also happened over five years ago. (*Id.* at 129). Third, in 2018, Defendants began scheduling Ms. Hayden to work on Wednesdays, a day she previously had off to attend bible study. (*Id.* at 156). On October 18, 2019, Ms. Hayden made a formal religious accommodation request to the Scheduling Committee, to not be scheduled to work on Wednesdays so she could attend bible study. (*Id.* at 169). Finally, Defendants did not provide Ms. Hayden with written confirmation

of her religious accommodation after it was approved on December 23, 2019. (ECF No. 69-5, at 5).

The Court may consider all of these religious-based events in analyzing Ms. Hayden's hostile work environment claim, because the failure to provide written approval of Ms. Hayden's religious accommodation occurred on December 23, 2019, which was 148 days before she filed her 2020 EEOC Charge. Thus, Defendants' failure to provide Ms. Hayden with written confirmation of her religious accommodation falls within the EEOC's 300-day limitations period and the continued violations doctrine applies.

Even though all of these events may be considered by the court, the events are not severe or pervasive enough to establish a hostile work environment claim. Several events such as these, which occurred intermittently within Ms. Hayden's near 40-year tenure at the hospital, does not rise to the requisite level of severity or pervasiveness needed to establish a hostile work environment claim. *See Georg v. Allegheny Energy Service Corp.*, 2012 WL 1235017, at *6 (W.D. Pa. 2012) (holding that three comments, even if they were tied to plaintiff's religion, covering the span of a month, are not severe or pervasive); *see also Hamera v. Cnty. Of Berks*, 248 F. App'x 422, 425 (3d Cir. 2007) (one comment regarding the plaintiff visiting a priest "while inappropriate—does not arise to the requisite level of harassment that a reasonable jury would find actionable."). Additionally, Defendants eventually accommodated Ms. Hayden, and stopped scheduling her to work on Wednesdays. Failure to provide written confirmation of that accommodation, especially when that is not the custom of the Union, is not severe or pervasive enough, because it is not so objectively offensive that it would alter the conditions of Ms. Hayden's employment.

Further, Ms. Hayden does not provide sufficient record evidence to establish that the facially neutral events, as discussed above and as described in her Second Amended Complaint or about which she testified in her deposition, occurred because of her religion.

Therefore, as these events do not rise to the requisite level of severity or pervasiveness, Defendants Motion for Summary Judgment will be granted as to Ms. Hayden's religion-based hostile work environment claims.

### iii.   Hostile Work Environment – Disability

At Count IV of her Second Amended Complaint, Ms. Hayden brings a disability-based hostile work environment claim. Defendants argue that Ms. Hayden fails to establish a disability-based hostile work environment claim, because she only reiterates allegations from her failure to accommodate claim and offers no other conduct that can be viewed as harassment because of her disability. (ECF No. 66, at 29). Ms. Hayden argues that the totality of all alleged discriminatory events, related to all protected classes, must be considered together to establish a hostile work environment claim. (ECF No. 84, at 16). Ms. Hayden further argues that Defendants neglected to provide her with her requested accommodations and required her to walk during her shift. (*Id.* at 18).

Here, Ms. Hayden's allegations that Defendants refused to provide her with her requested medical accommodations and forced her to stand while working is just a repeat of her failure to accommodate claim under the ADA, for which she failed to exhaust administrative remedies. Ms. Hayden does not provide any sufficient record evidence to suggest that these decisions were made *because of* her disability or any prior request for accommodations. *See Woods v. Astrazeneca Pharms., L.P.*, 2023 WL 2393649, at *24 (M.D. Pa. 2023) (finding Plaintiff's allegations that are

unrelated to their disability cannot be considered in an ADA hostile work environment claim.) Further, Ms. Hayden does not provide sufficient record evidence to establish that the facially neutral events, as discussed above and as described in her Second Amended Complaint or about which she testified in her deposition, occurred because of her disability.

As such, Defendants Motion for Summary Judgment will be granted as to Ms. Hayden's disability-based hostile work environment claims.

### iv.    Ms. Hayden's ADA Failure to Accommodate Claim

Although this Court has found that Ms. Hayden's ADA failure to accommodate claim was not properly administratively exhausted, even if such claim had been within the scope of the EEOC's investigation based upon Ms. Hayden's hostile work environment claim, such claim would still fail, because Defendants reasonably accommodated Ms. Hayden for her disability.

To establish a prima facie case for failure to accommodate under the ADA, Ms. Hayden must show that (1) Defendants knew about her disability, (2) Ms. Hayden requested accommodations or assistance, (3) Defendant's did not make a good-faith effort to assist her, and (4) she could have been reasonably accommodated. *Behm v. Mack Trucks*, 2023 WL 3171559, at *2 (3d Cir. 2023) (quoting *Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 772 (3d Cir. 2004). "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x. 166, 122 (3d Cir. 2013). Moreover, "an employee cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided." *Solomon v. Sch. Dist. Of Phila.*, 154, 158 (3d Cir. 2013).

In Ms. Hayden's October 22, 2019 accommodation form, she requested to work full time at the greeter's desk. (ECF No. 73, Ex. 15). Ms. Hayden provided a doctor's note in support of her accommodation request on October 30, 2019. (ECF No. 71-2, at 3). The doctor's note related that Ms. Hayden could not stand for long periods of time when incapacitated because of medical complications. (*Id.*). On January 3, 2020, after conferring with the Union, Defendants eventually permitted Ms. Hayden to sit for her entire shift. (ECF No. 82-12).

Allowing Ms. Hayden to sit for her entire shift not only complied with, but exceeded the suggestions of Ms. Hayden's doctor. The doctor opined that Ms. Hayden had complications standing when incapacitated, but Defendants permitted Ms. Hayden to sit for her *entire shift*. This arrangement accommodated Ms. Hayden's restrictions as described by her doctor; therefore, said arrangement constituted a reasonable accommodation. Even though Ms. Hayden may feel the only reasonable accommodation was to be scheduled to work only at the greeter's desk, the ADA does not require employers to provide employees with the exact accommodation requested. *Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F.Supp.3d 463, 470 (E.D. Pa. 2016) (rejecting Plaintiff's failure to accommodate claim because although plaintiff did not receive "the accommodation she desired, the accommodation offered by [defendant] addressed all the limitations that her physician placed on her.").

Thus, even if Ms. Hayden's ADA failure to accommodate claim was properly before the Court, it still fails, because Defendants reasonably accommodated Ms. Hayden when they allowed her to sit for her entire shift.

### v. Ms. Hayden's Hostile Work Environment Theory

Although this Court has assessed each protected class independently in analyzing the hostile work environment claim, the Court will address Ms. Hayden's argument that the totality of events, regardless of protected class, establish such a claim. Even under such analysis, Ms. Hayden's hostile work environment claim still fails. Ms. Hayden does not establish any question of material fact that the alleged cumulative conduct is severe or pervasive enough to establish a prima facie case to support a hostile work environment.

As Ms. Hayden alleges discriminatory conduct that occurred within 300 days from when she filed her 2020 EEOC Charge, if the Court applied her suggested method to analyze her hostile work environment claim, the continuing violation doctrine would apply, and the Court could consider all of the alleged discriminatory conduct together, regardless of the relatedness to any specific protected class. Ms. Hayden alleges various discriminatory events that span her more than 40-year tenure at AVH.

The earliest alleged discriminatory conduct that Ms. Hayden provides an approximate date for, happened about twenty years ago, when a coworker called Ms. Hayden the n-word a "middle ways" of her working at AVH. (ECF No. 69-1 at 117-18). The next alleged discriminatory conduct happened about ten years ago, when a coworker told Ms. Hayden that she only had her job because she was black. (*Id.*). Approximately five years ago, a coworker told Ms. Hayden that interracial dating diminished the value of white people. (*Id.*). Also, about five years ago, Ms. Stello ripped down Ms. Hayden's Christmas poster. (*Id.* at 128). In 2018, Defendants began to schedule Ms. Hayden to work on Wednesdays, the day she previously had off to attend bible study. On February 11, 2019, Ms. Brown told Ms. Hayden that "the cafeteria and housekeeping doesn't use Epic." (ECF No. 82-1). On March 4, 2019, Ms. Stello said, "I smell chocolate," near Ms. Hayden. (ECF No. 82-2). Finally, on February 18, 2020, a security guard told Ms. Hayden that Ms. Pasko told a

patient that Ms. Hayden was "old" and "didn't know how to do her job." (ECF No. 69-1, at 213-14).

Ms. Hayden does not provide dates for some of the other alleged discriminatory conduct attributed to her protected classes. These events include, that Ms. Pasko often called Ms. Hayden "missy," (*Id.* at 117.), that Ms. Hayden was not assigned "light duty," (*Id.* at 122-123.), and that Ms. Pasko continuously asked Ms. Hayden when she would retire. (*Id.* at 123.)

Further, Ms. Hayden does not provide sufficient record evidence to establish that any of the facially neutral events, as discussed above and as described in her Second Amended Complaint or about which she testified in her deposition, occurred because of any of her protected classes. Thus, such facially neutral conduct will not be considered for this claim.

Considering all the conduct related to all protected classes cumulatively, the frequency in which the events occurred are not enough to establish that it permeated Ms. Hayden's employment so much so that it altered the conditions of her employment; and thus, the conduct is not sufficiently pervasive to establish a prima facie case of hostile work environment. The earliest alleged discriminatory conduct, that a coworker called Ms. Hayden the n-word, occurred over twenty years ago, and the closest alleged conduct to that event occurred ten years after. In fact, nearly all the alleged discriminatory conduct occurred years apart or Ms. Hayden does not provide any timeframe. *See Goff v. Cummins, Inc.*, 2023 WL 2773542, at *5 (M.D. Pa. 2023) (finding that isolated or sporadic events that occur over a span of several years do not constitute pervasive harassment). As such, the alleged discriminatory conduct does not rise to the level of pervasiveness required to establish a hostile work environment claim.

Furthermore, the alleged discriminatory conduct related to a protected class, considered together, does not rise to the level of severity required to establish a hostile work environment claim, because Ms. Hayden does not establish that it unreasonably interfered with the terms and conditions of her employment. The alleged comments and conduct that Ms. Hayden was subjected to span many years, none of it was physically threatening, and she fails to show how the aggregation of this conduct materially affected her employment. The Court is aware that a single event can create a hostile work environment, if extreme enough. However, such instances are extremely fact specific. *See Castleberry*, 863 F.3d at 265. Each of these events occurred years apart from one another, some of which Ms. Hayden reported, others she did not. The passage of time between events and the inconsistency in reporting or following up with the reporting of these events suggests that they were not severe enough to alter Ms. Hayden's employment conditions. In fact, it seems that Ms. Hayden did not have much issue with any of the older conduct until the more recent matters arose. Accordingly, Ms. Hayden fails to establish that the alleged discriminatory conduct, considered cumulatively, rises to the level of severity sufficient to establish a hostile work environment claim.

Thus, even if the Court applies Ms. Hayden's method of analysis to her hostile work environment claim, she fails to provide sufficient record evidence to establish the requisite elements of severity or pervasiveness and cannot establish a hostile work environment claim.

### E.  Count V: Constructive Discharge Claim

Ms. Hayden brings a constructive discharge claim against Defendants, alleging that the hostile work environment she experienced escalated to the point that she had no choice but to resign. (ECF No. 84, at 19). Defendants argue that Ms. Hayden provided no sufficient record evidence to establish any question of material fact as to her constructive discharge claim. (ECF

No. 66, at 30). Ms. Hayden argues that she provided sufficient record evidence to establish that her work conditions deteriorated enough, such that no reasonable person would have continued working under the same conditions. (ECF No. 84, at 19).

To succeed on a constructive discharge claim, Ms. Hayden must prove that Defendants "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Angeloni v. Diocese of Scranton,* 135 F. App'x 510, 513 (3d Cir. 2005) (quoting *Gross v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). In other words, "the plaintiff must show that the alleged discrimination goes beyond a 'threshold of intolerable conditions'" *Id.* (citing *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001). Courts must use an "objective test to determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 502 (3d Cir. 2010) (quoting *Duffy*, 265 F.3d at 167)). "The focus is . . . on a reasonable person, not on the complaining employee, since 'the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.'" *Colwell v. Rite Aid Corp.*, 2008 WL 4748226, at *6 (M.D. Pa. Oct. 27, 2008) (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1162 (3d Cir. 1993)).

Courts consider various factors in deciding whether constructive discharge occurred. Those factors include whether the employer (1) threatened the employee with discharge or urged or suggested that the employee retire, (2) demoted her, (3) reduced her pay or benefits, (4) involuntarily transferred her to a less desirable position, (5) altered her job performance responsibilities, or (6) gave unsatisfactory job evaluations. *Id.* at 503 (quoting *Clowes*, 991 F.2d at 1161.). If there is no evidence of these factors, then a plaintiff must prove that "'the employer

[was] aware that the employee [had] been subjected to a continuous pattern of harassment and . . . [did] nothing to stop it.'" *Colwell*, 2008 WL 4748226, at *7 (quoting *Duffy*, 265 F.3d at 168).

Here, Ms. Hayden relies on the arguments she provided in support of her hostile work environment claim as evidence that she was constructively discharged. The Third Circuit has held that, "to prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4, (3d Cir. 2006). For the reasons stated above, Ms. Hayden has not provided sufficient record evidence to establish a hostile work environment claim related to any of her protected classes. Further, Ms. Hayden has not established that she experienced harassment *more severe or pervasive* than that required for a hostile work environment claim. Thus, her constructive discharge claim fails. Defendant's Motion for Summary Judgment will be granted as to Count V of her Second Amended Complaint, Constructive Discharge.

## IV.    Conclusion

For these reasons, Defendants' Motion for Summary Judgment will be granted in full and Ms. Hayden's Partial Motion for Summary Judgment will be denied. Judgment will be entered in favor of the Defendants as to all claims and counts in the Second Amended Complaint. A separate Order will follow.


DATE: __2/29/2024_____

Marilyn J. Moran
United States District Judge